We'll start with the first case on calendar, United States v. DeLaura. Good morning. May it please the Court. Good morning. My name is Andrew Freifeld and I represent Jonathan DeLaura. This plea agreement wasn't merely useless to DeLaura, it hurt him. In United States v. Dorothy, this Court observed that the extensive enhancements at Section 2G 2.2 of the Guidelines can easily generate unreasonable results. Here, counsel stipulated to every single enhancement under the Guideline and got zero in return. It's no wonder, then, that the government saw no need to even issue a Pimentel letter in the case. On appeal, in response to this ineffective assistance claim, the government does not deny that this plea agreement did nothing but bring ice to DeLaura in the dead of winter. Instead, the government merely argues that the government should be afforded the opportunity to develop a record in a habeas hearing. However, the government proffers nothing that could hypothetically turn up at such a hearing that could show that this plea deal was other than useless to DeLaura. Thus, this Court should determine that DeLaura's counsel was ineffective for advising him to even enter into this plea agreement. On top of our claim that his counsel had him enter into a bad deal, the record shows also that his counsel had a conflict of interest. And the two together, ineffective assistance plus a conflict of interest shown, it's really vice versa, a conflict of interest shown showing an ineffective assistance, that's the precise reason that the often-exacting standard under Strickland of a defendant having to show prejudice on an ineffective assistance claim is so relaxed. In terms of the conflict, you would grant it was a challenging situation for the district judge, who tried every which thing seemingly. If we grant you relief on that, and we have to find some error that the district court committed, what should the district court have done? It should have confronted the attorney and made the attorney speak. That's it. Why did he give this guy, Greenwald, a pass when Greenwald said, I'm not inclined to answer your question. The judge then said to him, you want to invoke a movie? You don't want to answer my questions? Fine. We'll have a hearing. It turns out that the hearing that he has was having DeLaura waive his right to conflict recounsel. What kind of threat was that? Why wasn't it enough for the district court to direct the defendant to assume that there was such a personal relationship between Greenwald and his mother? I think it's unbecoming to an Article III court that the possibility exists that the consideration that a defendant is paying for counsel is even in part a sexual relationship between his counsel and his mother. But even putting that aside, make him assume what? Assume that they had a relationship and the relationship ended and Greenwald's angry, so he's advising him to take this bad plea? Is that what the government would have this court believe that he should have assumed? Assume what? That the affair happened and that it's over? Or that the affair happened and that it's continuing? The government never made a record, nor did the district court, as to what potential conflict DeLaura should assume had occurred. So . . . Didn't the district court direct that he assumed that the counsel had a relationship with . . . How old was your client at that time? He was in his thirties. In his thirties, with his mother. Yeah, it was his mother. And then explored in some detail the kinds of conflicts that could result, and he appointed independent counsel as well . . . Yes. . . . to be available to your client to discuss the possibilities of conflict that could arise. Okay, but a conflict could arise where the counsel is angry at the mother for no longer having sex with him, and he therefore advises the client, you better plead guilty now. Knowing in his brain that the district court is going to get this guy good, given the nature of the charges, is that the type of conflict that the government would have the court assume DeLaura was assuming? Is that a waivable conflict? Is that a waivable conflict? That the district court then had to call Mr. Greenwald and make him admit that there is, or deny under oath, that he had a relationship. And that would have been the end of it? That would have . . . No. If the same series of events had occurred after, would that have cured the problem? The court has a duty to inquire. There is nothing saying exactly what the duty to inquire is. The government presumably had evidence it could have conducted a hearing. It didn't have to ask Greenwald directly. The government could have called the mother at the hearing. The government could have called someone who knew that those two were having an affair. The court made no inquiry whatsoever. So while the answer is yes, that in the final analysis, I believe that Greenwald had to answer Judge Karas's questions should he have posed them, that doesn't mean that was the only avenue for the court to make an inquiry, is my answer. Your client expressed disbelief that this affair was taking place. Yes. I think that's an important fact. He did, and maybe he's a fool. I submit, Your Honor pointed out that Curcio Counsel was appointed. Curcio Counsel did not do his job here, and I'm going to answer your question, Judge Jacobs. Curcio Counsel did not do his job because he went and met Delore, and Delore clearly said, I don't believe this, so I'm ready to waive. So Curcio Counsel comes into court, and he starts advocating, well, Judge, just have him assume it's true. You need to proceed and make the inquiry. That wasn't his job. That wasn't his job was not to advocate for Delore at that point because there was, without him advocating, by him advocating, supposedly advocating Delore, there was no one there to say to the court, what if Delore is wrong? Delore assumes it's true. That's fine. What if this court conducts an inquiry and turns out Delore, I apologize for banging, by the way. Was the record that was developed such as it was sufficient for the judge to have made a finding then or make a finding on remand hypothetically as to whether, in fact, there was a conflict based on the sexual relationship? Was the record, first of all, on a remand, certainly the court could make such a finding. You could have Delore's mother testify. Greenwald is dead. Oh, I was unaware of him. I'm sorry. He's not there. Oh, he was alive, and I spoke to him while I was preparing the brief. I was unaware that he passed away. In any event, he had counsel, by the way, that appeared with him all the time. I've spoken with Delore's mother, so she's alive. She was obviously a witness to this. I have no idea what she would say, but in addition, the record below shows that the government found this information out from a third party who was aware of, allegedly aware of what was going on between Delore and his mother. We don't know what the government knows. The government said at the hearing, I take it back, Greenwald said at the hearing that the government found this out from a third party. He said, I haven't answered them. The mother hasn't answered them. So when they've asked about it, so the only way that they know, in fact, I know who the person is, Greenwald says, he doesn't identify it. He says, I know who the person is. He suggests it's a competitor of his in business who has a beef with him, if you will, and that's what he suggests on the record. So the government is aware, according to Greenwald, the government learned of this information from a third party who alleged to be privy to everything. So there is the government in sum at this point, I'll save the rest for rebuttal, the court readily could have conducted a hearing, and it was not a sine qua non of the hearing that Greenwald answered the court's questions. Could the judge have made a finding that would be entitled to deference based upon what already had taken place in his courtroom? No. As to whether there was an affair or not. The government alleged that there was an affair. Nobody alleged that there was no affair. So the answer is yes, based on the government's own allegations. Did Mr. Greenwald say he had never been alone with the defendant's mother? I believe he did say that. Doesn't that signify, isn't there a deduction available? I suppose there's a deduction available, but not always, not per se. Okay, we'll hear you on rebuttal. Thank you. May it please the court, Carl Metzner, I'm an assistant United States attorney in the Southern District of New York, and I represent the United States on this appeal. Jonathan DeLauro knowingly and voluntarily waived any potential conflict if one even arguably existed. Why would it be a potential? I mean, if it existed, it would be actual. Not at all, Your Honor. If there was an affair going on, if his mother was, as it were, paying the retainer of the lawyer by sexual services and then withheld them and the lawyer then washed his hands of the case, why would that be a potential conflict? Your Honor, that is no different, putting aside the salacious aspect of it, to any case where a defense attorney fails to get paid in connection with their representation. And it happens with quite a great deal of frequency, Your Honor, that a family member . . . And the defendant knows. Not necessarily, or he may know or he may not, but the idea that a family member is arranging for the fee payments on behalf of a defendant happens with regularity, and when that money runs out, Your Honor, if I may, that doesn't create a conflict. There's no pulling in opposite directions here. There's no divided loyalty. The loyalty is always squarely with the client. There's only one client here, and that was Jonathan DeLaura. Isn't the situation a little more complicated than that? If there's an emotional or sexual relationship between the mother and the attorney, the district court spelled out a number of different kinds of ways in which a conflict could be expressed in the kind of advice that was given. So didn't the district court actually have a duty to determine whether there was such a relationship, to determine whether there was an actual conflict? Not at all, Your Honor. The judge did exactly what he was supposed to do because his job is not bar counsel. It is not his job to determine the ethical violations that may or may not be committed by the lawyer. His job is to make sure the Sixth Amendment rights of the defendant in front of him are protected. And we have said that the district court has a threshold obligation to determine whether the attorney had an actual conflict, a potential conflict, or no conflict. Why doesn't that obligation fall on the district court here to determine whether there was such a relationship or not? The judge did what he was supposed to do, which was to accept the possibility of the allegations being true, the worst case scenario, as it were. If the information that the government had turned out to be correct, what were the ramifications for Jonathan Delora as a defendant? That was what the judge told Mr. Delora over and over and over throughout this hearing to accept as true, if those are true. How do you square that with Kain, U.S. v. Kain, which says that, first, the district court must, at the inquiry stage, investigate the facts to determine whether the attorney, in fact, suffers from an actual conflict, a potential conflict, or no conflict at all? Was that done here? Judge, the court in Kain did not say that it was inappropriate for a district judge to accept the possibility of a conflict and then move to the next stage, which is, if the conflict exists... The possibility is not to determine whether there is one. Well, Your Honor, by saying that, in fact, the information as brought forth by the government was true, that is accepting or determining the existence of, and again, arguably no conflict at all, but nevertheless, in an abundance of caution, being protective of Mr. Delora's rights, we assume that that sort of a relationship would create a conflict. It wouldn't. He has a duty of loyalty to the only client he has here, and that duty of loyalty to zealously represent him exists whether or not his fees are being paid or even if there is some untoward arrangement that exists related to those fees. Mr. Greenwald had a duty of loyalty to one person only. You're saying because he had a duty of loyalty to one person only that a relationship that might cause him to develop some animus towards his client wouldn't be relevant? It wouldn't rise to the level of a Curcio-related conflict, Your Honor. Lawyers always have an obligation to zealously represent their clients. That's always true in every case. A Curcio hearing is appropriate when a lawyer might be representing two parties or have two people with opposing interests that the lawyer can't balance. But a lawyer whose job it is to represent their client always has that responsibility whether their fees are being paid or not. But to assert that is not to say that it cannot be compromised by facts in the world. For example, if the client negligently killed the child in an automobile accident of the lawyer, that might create an emotional kind of conflict that would require the lawyer to decline the representation or that would at least create a basis for inquiry. And you could still say in that circumstance that the lawyer had an ethical obligation to put the client first, but that doesn't mean that there can't be circumstances that would develop a conflict that would need to be taken account of by the trial judge, doesn't it? It certainly could be the basis for a lawyer to seek to be removed from a case or for a defendant to seek new counsel, and that would be explored at a change-of-counsel hearing, which again happens with regularity in the district court when things like that arise. But the issue here is whether the defendant's Sixth Amendment rights were potentially violated by conflicted counsel. In any event, Your Honor, Judge Karras... You're blandly saying that no matter what the facts were, accepting them at the worst, there is no conflict. But it is the prosecution that brought this to the attention of the court, presumably because it felt an obligation to do so and because it raised the very issue that you say now doesn't exist. Your Honor, we brought it to the attention of the court, as we often do, out of an abundance of caution and concern to ensure that the defendant's rights are protected. Judge Karras then conducted a hearing accepting those allegations to be true and then asked Mr. DeLauro over and over and asked him in 17 different ways whether in light of those allegations, assuming they were true, whether he still wanted to keep Mr. Greenwald as his attorney. Judge Karras went through all the permutations that Your Honor has discussed about the potential ramifications for the existence of that relationship as it related to Mr. DeLauro's case. Mr. DeLauro, knowingly and voluntarily understanding that if those things were true, it could have those effects, nevertheless decided that he wanted to keep Mr. Greenwald as a lawyer. And then the next thing that happened was a month later, a full month later, when Mr. DeLauro appeared for his guilty plea. Judge Karras, again, before accepting the guilty plea, went back to Mr. DeLauro and said, I want to remind you of the discussion we had a month ago. Are you still satisfied with Mr. Greenwald's representation? Do you still want him to represent you? Again, Mr. DeLauro said yes. He wanted to continue the representation. I'm confused about the government's position. Is it your position that no hearing at all was necessary? Your Honor, the hearing... Is that your position? I'm not certain that whether a hearing had to have occurred, but it did. I'm asking you, is it your position, what I'm hearing you say is that because Mr. Greenwald had an ethical obligation to put his client first and because there was no dual representation situation such as was presented in Curcio, that no hearing was necessary. Is that your position? Your Honor, my position is that... Is that your position? Yes or no? A hearing did not have to occur, but it did. So we don't have to decide that. Your position is that no hearing had to occur? But it did. Yes, Your Honor, but it did. I just want to know the answer to that question. Yes, Your Honor. Thank you. Unless the Court has further questions, the plea agreement is not subject to attack at this stage. But what do you say to your adversary's argument that the plea agreement rendered Mr. Delora ice and winter? That's utterly preposterous on its face, Your Honor. Mr. Delora... Is it likely that Mr. Delora will ever see the light of day? That's exactly the point of this plea agreement, Your Honor. Mr. Delora, from the facts in this record, is a repeated child rapist who repeatedly preyed upon and coerced and threatened children to have sex with him. Nevertheless, he was given the opportunity to plead guilty to four child pornography offenses. That plea agreement gave Mr. Delora the opportunity to someday get out of prison alive, as opposed to dead. To say that he did not receive a benefit from this plea agreement is an insult to the victims that he preyed upon over and over. The plea agreement that he got gave him tremendous benefits, the chance to get out of prison alive. In any event, those issues have not been fully vetted, which is why this court repeatedly refuses to consider such claims on direct appeal. Should Mr. Delora like to file a 2255 motion and argue that his lawyer was ineffective for recommending this plea, the government would have the opportunity to present all of these issues at a hearing before Judge Karas, and the judge could make findings. I understand that your adversary has read the prospect that the client would have been just as well off with a naked plea to the indictment. The information, he was never indicted, Your Honor. He agreed to plead to an information, which is an important... I see your point. There are other charges that were never filed here, Your Honor. But again, that's not in the record, and that's why this can't be considered at this point. Thank you. Thank you. I submit that Delora did not need the plea agreement to get a chance to get out alive. The complaint is certainly part of the record. It shows that all of the charges that were in the information in their entirety constituted the charges that were in the complaint. So the fact that once the charges were set, the information was filed long before the plea agreement, if my memory serves me, because Delora had waived. It's certainly in the record on appeal how much time had elapsed. But there is nothing to show in this record that the government had the ability to charge Delora with anything other than that which was set forth in the complaint already before the information was filed. That would have been limited to offenses involving child pornography rather than the actual interference with children? Insofar as I know, that's correct. And second, insofar as Your Honor's observation that perhaps the court could affirm because Judge Karas could have found that there was no sexual relationship because he did state at one point that he was never alone with her. I emphasize that we don't know the information that was in the government's possession at the time, and it's quite possible that without having conducted the hearing, the government readily could have impeached him with such material if the court had had a hearing. Just because he says he was never alone with her, one, that doesn't mean that they didn't have per se, that they had no intimate relations whatsoever. And second, certainly the government was in possession of information which shows that they had reason to believe that they were never alone together, and if indeed, and because the record shows that, Judge Karas should have made the complete inquiry. Wherefore, this court should not rely on Greenwald's one naked statement that he was never alone with her to affirm alone. And given all of this, what is the relief you would seek? The plea is done. The plea is done. The court can't remand to have a hearing as to what their sexual relationship was because Delora's going to claim, Hey, if I knew that one little tidbit, believe me, I never would have waved. That's what he's going to say. In other words, if this court remands for a hearing to determine about the conflict, I suspect Delora is going to say, no matter what comes out of that hearing, he's going to say, I never would have waved if I had known that one fact. So it makes, so wherefore, the court should vacate the pleas. Thank you. Thank you. Thank you both. Reserve decision.